**UNITED STATES BANKRUPTCY COURT**       **Hearing Date and Time**
**EASTERN DISTRICT OF NEW YORK**       **February 14, 2024 at 10:00 am**

-----------------------------------------------------------------x

In re:

                                          **Chapter 11**
        **ALEXA & ROGER INC**.,                 **Case No. 23-44441 (JMM)**

                          Debtor.

-----------------------------------------------------------------x

## NOTICE OF MOTION OF FAIRBRIDGE STRATEGIC CAPITAL LLC TO: (A) PROHIBIT USE OF CASH COLLATERAL AND SEGREGATE CASH COLLATERAL AS ADEQUATE PROTECTION; (B) DESIGNATE THE DEBTOR AS A SARE DEBTOR; AND (C) TERMINATE <u>THE DEBTOR'S EXCLUSIVITY PERIODS</u>

**PLEASE TAKE NOTICE**, that Fairbridge Strategic Capital LLC ("Fairbridge"), by its

counsel, Sahn Ward Braff Koblenz Coschignano PLLC, shall move before The Honorable Jil Mazer-

Marino, United States Bankruptcy Judge, at a hearing (the "Hearing") to be held on **February 14,**

**2024 at 10:00 am**, or as soon thereafter as counsel may be heard (the "Hearing Date"), for entry of

an order: (a) prohibiting the Debtor from using cash collateral in which Fairbridge has an interest

and requiring the Debtor to segregate cash collateral for the benefit of Fairbridge; (b) designating the

Debtor as a SARE Debtor pursuant to section 101(51B) of the Bankruptcy Code; (c) terminating the

Debtor's exclusive periods to file and a confirm a plan in this case pursuant to section 1121(d)(1) of

the Bankruptcy Code; and (d) granting Fairbridge such other and further relief as to this Court seems

just and proper (the "Application").

**PLEASE TAKE FURTHER NOTICE**, that parties wishing to participate in the Hearing on

the Hearing Date, may appear at the Hearing in person, by phone or by videoconference. Those

intending to appear at the Hearing must register with eCourt Appearances no later than two days

prior to the Hearing. The phone number or video link for the Hearing will be emailed only to those

that register with eCourt Appearances in advance of the Hearing. Instructions for registering with eCourt Appearances can be found at https://www.nyeb.uscourts.gov/node/2126. If you do not have internet access or are otherwise unable to register with eCourt Appearances, you may call or email Judge Mazer-Marino's courtroom deputy for instructions at (347) 394-1844 or JMM_Hearings@nyeb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Application must be in writing and shall state with particularity the grounds therefor, and, pursuant to General Order No. M-182 re: Electronic Case Filing Procedures (as amended from time to time), objections to the Fee Application (formatted with Adobe Acrobat, rider 3.0) shall be filed with the Clerk of the Bankruptcy Court, at http:// www.nyeb.uscourts.gov (with a copy to Chambers), and served upon and received by Sahn Ward Braff Koblenz Coschignano PLLC, 333 Earle Ovington Blvd, Suite 601, Uniondale, New York, Attn: Joel M. Shafferman, Esq.; and the United States Trustee's Office, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attention: Reema Lateef, Esq. U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 no later than 5:00 P.M. seven (7) days prior to the Hearing Date.

DATED:  Uniondale, New York
          January 22, 2024

> Sahn Ward Braff Koblenz Coschignano PLLC
> Attorneys for Fairbridge Strategic
> Capital LLC
>
> By:_/S/ Joel M. Shafferman_____
> Joel M. Shafferman, Of Counsel
> 333 Earle Ovington Blvd Ste 601,
> Uniondale, New York 11553
>  Email: jshafferman@sahnward.com

**UNITED STATES BANKRUPTCY COURT**      **Hearing Date and Time**
**EASTERN DISTRICT OF NEW YORK**        **February 14, 2024 at 10:00 am**
-----------------------------------------------------------------x
**In re:**

                                        **Chapter 11**
**ALEXA & ROGER INC.,**                 **Case No. 23-44441 (JMM)**

                        **Debtor.**
-----------------------------------------------------------------x

### APPLICATION OF FAIRBRIDGE STRATEGIC CAPITAL LLC TO: (A) PROHIBIT USE OF CASH COLLATERAL AND SEGREGATE CASH COLLATERAL AS ADEQUATE PROTECTION; (B) DESIGNATE THE DEBTOR AS A SINGLE ASSET REAL ESTATE DEBTOR; AND (C) TERMINATE THE DEBTOR'S EXCLUSIVITY PERIODS

**TO:    THE HONORABLE JIL MAZER-MARINO,**
**         UNITED STATES BANKRUPTCY JUDGE:**

The Application of Fairbridge Strategic Capital LLC ("Fairbridge") by its counsel, Sahn Ward Braff Koblenz PLLC, which seeks the entry of an order: (a) prohibiting Alexa & Roger Inc., the debtor and debtor in possession (the "Debtor") from using cash collateral in which Fairbridge has an interest and requiring the Debtor to segregate cash collateral for the benefit of Fairbridge; (b) designating the Debtor as a single asset real estate debtor pursuant to section 101(51B) of the Bankruptcy Code; (c) terminating the Debtor's exclusive periods to file and a confirm a plan in this case pursuant to section 1121(d)(1) of the Bankruptcy Code; and (d) granting Fairbridge such other and further relief as to this Court seems just and proper, sets forth and alleges as follows:

### PRELIMINARY STATEMENT

1.      Fairbridge is the holder of a secured claim against the Debtor's real property known as and located at 381 Myrtle Avenue, Brooklyn, New York 11205 (the "Property"), in the amount of approximately $2,800,000. Although the Debtor's Chapter 11 petition filed on December 1, 2023 requested that the case proceed as a case under Subchapter V of Chapter 11 of the title 11 of the

United States Code (the "Bankruptcy Code"), on December 27, 2023, Gerard R. Luckman, Esq.,

who was initially appointed as Subchapter V Trustee, filed a Report of No Distribution [ECF Doc.

#20], a copy of which is attached hereto as **Exhibit "A"**, stating that "[t]he case was converted to a

SARE chapter 11 with no plan confirmed and no plan payments were made to the trustee" and

requesting that he be "discharged from any further duties as trustee".  Therefore, as the first branch

of this motion, Fairbridge requests entry of an order, designating the Debtor's bankruptcy case as a

single asset real estate case under section 101(51B) of the Bankruptcy Code.

2.        More than one month has passed since the filing of the Debtor's Chapter 11 petition,

and the Debtor has not only failed to make any adequate protection payments to Fairbridge, but it

has also been using Fairbridge's cash collateral without consent despite Fairbridge's filing a notice

of interest in cash collateral with this Court on December 26, 2024 [ECF Doc#17]. Therefore, by this

motion, Fairbridge also seeks an order prohibiting the Debtor from using cash collateral and

requiring the Debtor to segregate cash collateral for the benefit of Fairbridge. The relief requested in

this motion is urgently needed to protect Fairbridge's interests in the cash collateral before it

vanishes because of misuse, misappropriation, or diversion to third parties.

3.        This case is, in essence, a two-party dispute between Fairbridge and the Debtor.[1] The

Debtor has chosen this forum but will be unable to reorganize without Fairbridge's consent.

Therefore, by this Motion Fairbridge also seeks entry of an order terminating the Debtor's exclusive

plan filing and solicitation periods (the "Exclusive Periods") so that it can file a liquidating plan of

reorganization in this case that is implemented by a public auction sale of the subject property after

the completion of an appropriate marketing period.

---

[1] NYC Water Board (filed secured claim of $1,945.24) and New York State Department of Taxation & Finance
(filed claim of $515.91) are the only other known creditors in this case.

## **BACKGROUND**

4.        On or about January 25, 2013, HPHD Investors Group, LLC ("HPHD") loaned $712,063.10 to the Debtor which was secured by a mortgage recorded in the Office of the City Register, Kings County, on February 26, 2013, in CRFN 2013000079705 covering the real property known as and located at 381 Myrtle Avenue, Brooklyn, New York (the "Property₂") ("Mortgage #1")

5.        On or about October 23, 2013, HPHD assigned Mortgage #1 to Emigrant Funding Corporation ("Emigrant"), which assignment was recorded in the Office of the City Register, Kings County, on November 25, 2013 in CRFN 2013000486287.

6.        On or about October 23, 2013, Emigrant loaned $37,936 to the Debtor which was secured by a gap mortgage recorded in the Office of the City Register, Kings County, November 25, 2013 in CRFN 2013000486288 covering the Property ("Mortgage #2").

7.        On or about October 23, 2013, Mortgage #1 and Mortgage #2 were consolidated and modified by that certain Agreement of Consolidation and Modification of Mortgage made by the Debtor on in favor of Emigrant, which mortgage was recorded in the Office of the City Register, Kings County, on November 25, 2013 in CRFN 2013000486289 to form a single lien, in the amount of $750,000.00.

8.        On or about October 25, 2018, Emigrant loaned $274,455.15 to the Debtor which was secured by a mortgage recorded in the Office of the City Register, Kings County, on November 14, 2018, in CRFN 2018000377782 covering the Property ("Mortgage #3").

---

2 The Property is mixed use building located with three residential units and one commercial unit.

9.      On or about October 25, 2018, Mortgage #1, Mortgage #2, and Mortgage #3 were consolidated and modified by that certain Agreement of Consolidation and Modification of Mortgage made by the Debtor on in favor of Emigrant, which mortgage was recorded in the Office of the City Register, Kings County, on November 14, 2018, in CRFN 2018000377783 to form a single lien, in the amount of $1,000,000.00.

10.     Mortgage #1, Mortgage #2, and Mortgage #3 as consolidated were assigned pursuant to that certain Assignment of Agreement of Consolidation and Modification Mortgage dated June 11, 2019, by and between Emigrant, as assignor, and 381 Myrtle Ave Funding ("Myrtle"), as assignee, which assignment was recorded July 12, 2019, in the Office of the City Register, Kings County, in CRFN 2019000220623.

11.     On or about June 11, 2019, Myrtle loaned $504,309.75 to the Debtor which was secured by a gap mortgage recorded in the Office of the City Register, Kings County, July 12, 2019, in CRFN 2019000220624 covering the Property ("Mortgage #4").

12.     Mortgage #1, Mortgage #2, Mortgage #3, and Mortgages #4 were consolidated and modified by that certain Agreement of Consolidation, Extension and Modification of Mortgage and Security Agreement made by the Debtor, on July 11, 2019, in favor of Myrtle, which agreement was recorded in the Office of the City Register, Kings County, on July 12, 2019, in CRFN 2019000220625 to form a single lien, in the amount of $1,500,000.00 (the "2019 Consolidated Mortgage").

13.     On or around January 28, 2022, Myrtle assigned the 2019 Consolidated Mortgage to Broadfield Realty Capital LLC ("Broadfield") pursuant to that certain Assignment of Mortgage Agreement which was recorded in the Office of the City Register, Kings County, on February 15, 2022, in CRFN 2022000070402.

14.     On or about January 28, 2022, Broadfield loaned $800,000 to the Debtor which was secured by a mortgage recorded in the Office of the City Register, Kings County, on February 15, 2022, in CRFN 2022000070403 covering the Property ("Mortgage #5").

15.     Mortgage #1, Mortgage #2, Mortgage #3, Mortgages #4, and Mortgage #5 were consolidated and modified by that certain Consolidated, Amended and Restated Mortgage and Security Agreement made by the Debtor, on January 28, 2022, in favor of Broadfield, which agreement was recorded in the Office of the City Register, Kings County, on July 12, 2019, in CRFN 2022000070404 to form a single lien, in the amount of $2,300,000.00 (the "2022 Consolidated Mortgage").

16.     The Debtor's obligation pursuant to the 2022 Consolidated Mortgage was further secured by an Assignment of Leases and Rents by the Debtor, as assignor to Broadfield, as assignee which was recorded in the Office of the City Register, Kings County, on February 15, 2022, in CRFN 202200007040 (the "Assignment of Leases and Rents")

17.     On or around January 28, 2022, Broadfield assigned the 2022 Consolidated Mortgage to Realfi Strategic Capital LLC, which is now known as Fairbridge, pursuant to that certain Assignment of Mortgage Agreement which was recorded in the Office of the City Register, Kings County, on February 24, 2022, in CRFN 2022000082787 (the "Fairbridge Assignment of Mortgage")

18.     On or around January 28, 2022, Broadfield assigned the Assignment of Leases and Rents to Realfi Strategic Capital LLC, which is now known as Fairbridge, pursuant to that certain Assignment of Assignment of Leases and Rents which was recorded in the Office of the City Register, Kings County, on February 24, 2022, in CRFN 2022000082788 (the "Fairbridge Assignment of Assignment of Leases and Rents"),

19.      The Debtor's obligation secured by the 2022 Consolidated Mortgage matured on November 1, 2022, and was not satisfied. As of December 1, 2023, the date that the Debtor commenced its Chapter 11 case, the Debtor owed Fairbridge the sum of $2,925,272.93.

20.      On December 1, 2023 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy petition commencing this bankruptcy case and has remained in possession of the Property as a debtor in possession.  The Debtor's chapter 11 filing was prompted by a UCC sale of the stock interests in the Debtor which had been scheduled by Fairbridge to be held in December 2023.

## ARGUMENT

**A.      The Court Should Prohibit the Debtor from Using Cash Collateral and
Require the Debtor to Segregate Cash Collateral for the Benefit of Fairbridge**

21.      Under Section 363(a), cash collateral includes:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in **which the estate and an entity other than the estate have an interest** and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title [11 USCS § 552(b)], whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis added).

22.      Under Section 363(c)(2), the Debtor may not use cash collateral until obtaining either the consent of the entity that has an interest or a court order authorizing such use after notice and a hearing.

23.     Specifically, Section 363(c) states that:

> (2) The [debtor in possession] may not use, sell, or lease cash collateral
> under paragraph (1) of this subsection **unless**—
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2) (emphasis added)**3**

24.     Section 363(c)(4)**4** imposes upon the Debtor an obligation to segregate cash collateral. Except as provided in paragraph (2) of this subsection, the [debtor in possession] shall segregate and account for any cash collateral in the [debtor in possession]'s possession, custody, or control.

25.     As set forth herein, the Debtor has a secured interest in the Debtor's rents and leases. When the Debtor filed its Chapter 11 petition, the rents generated from the Property became "cash collateral" under Section 363(a) of the Bankruptcy Code. Fairbridge has not consented to the Debtor's use of the Cash Collateral, nor has this Court issued an order permitting the Debtor to use Cash Collateral.

26.     Section 363(e) of the Bankruptcy Code provides that when a creditor objects to a debtor's use of its cash collateral, the bankruptcy court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

27.     Under Sections 362, 363 and 364 of the Bankruptcy Code, a secured lender is entitled to be "adequately protected" from any erosion in the value of its collateral. *U. S. Sav. Ass'n v. Timbers*, 484 U.S. 365, 370 (1988)("It is common ground that ... a secured creditor's interest is not

---

3 The term 'Debtor in Possession' has been substituted for the word 'Trustee' in the original text. Subject to certain exceptions, limitations and conditions, the Bankruptcy Code permits a Debtor in Possession to perform all of the functions and duties of a trustee until a trustee has been appointed. *See* 11 USC §1107.

adequately protected if the security is depreciating during the Chapter 11 reorganization."); *See also*, *In re Martin*, 761 F.2d 472, 474-77 (8th Cir. 1985) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53) (adequate protection should "as nearly as possible" provide secured lender with bargained-for rights); *Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 564 (3rd Cir. 1994) (same).

28.     The right to adequate protection arises from the Fifth Amendment's property interest protections. *See* In *re Panther Mt. Land Dev., LLC*, 438 B.R. 169, 189 (Bankr. E.D. Ark. 2010), aff'd 2011 Bankr. LEXIS 1274 (B.A.P. 8th Cir. 2011). "The purpose of adequate protection is to guard the secured creditor's interest from a decline in the value of the collateralized property." *In re Panther Mt. Land Dev.*, LLC, 438 B.R. at 189 (citing 11 U.S.C. §361; *In re Anthem*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001); U.*S. Sav. Ass'n v. Timbers*, 484 U.S. at 370).

29.     Hence, in exchange for providing protective assurances against a decline in property value, a debtor is allowed to retain the protections provided by the Bankruptcy Code. *See Id*. 484 U.S. at 378. "It is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected." *In re National Promoters*, 499 B.R. 192, 208 (Bankr. D. P.R. 2013)(quoting *In re South Side House LLC*, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012)).

30.     In the instant case, the Debtor has presumably, and intends to continue to, use Fairbridge's Cash Collateral without its consent and without first seeking authorization from this Court in contravention of Section 363(c) of the Bankruptcy Code.  Additionally, Fairbridge submits that it is not adequately protected in the instant case, and thus moves this Court to prohibit such use. See 11 U.S.C. § 363(e).

---

4 Section 363(c)(4) states that "Except as provided in paragraph (2) of this subsection, the [debtor in possession] shall segregate and account for any cash collateral in the [debtor in possession]'s possession, custody, or control."

**B.**  **The Court Should Enter an Order Designating the Debtor's Bankruptcy**
**Case as a Single Asset Real Estate Case Under Bankruptcy Code § 101(51B)**

31.  Under the Bankruptcy Code "single asset real estate" is defined as:

> real property constituting a single property or project, other than
> residential real property with fewer than 4 residential units, which
> generates substantially all of the gross income of a debtor who is not
> a family farmer and on which no substantial business is being
> conducted by a debtor other than the business of operating the real
> property and activities incidental thereto.

11 U.S.C. § 101(51B); *In re JJMM Int'l Corp.*, 467 B.R. 275, 277 (Bankr. E.D.N.Y. 2012); *In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at \*4 (Bankr. S.D.N.Y. May 21, 2010).

32.  In determining whether a case is a single asset real estate case, courts look to whether the debtor holds a single real estate asset, whether the debtor's income is substantially generated from rents paid by tenants, and whether the debtor conducts other business activity on the property beyond any activity incidental to its interest in, and generating rental income from, the property. *JJMM Int'l Corp.*, 467 B.R .at 277 ("[T]his Court has determined that Debtor's Property is commercial real property constituting a single property or project; that Debtor derives substantially all its gross income from leasing the Property; and that Debtor is engaged in no substantial business activity other than operating its Property and activities incident thereto. Therefore, Debtor's Property satisfies the definition of "single asset real estate" in § 101(51B)."); *In re Vargas Realty Enterprises Inc.*, No. 09-10402(SMB), 2009 WL 2929258, at \*1 (Bankr. S.D.N.Y. July 23, 2009); *In re Rear Still Hill Rd., LLC*, No. 07-31556 (LMW), 2007 WL 2935483, at \*3 (Bankr. D. Conn. Oct. 5, 2007).

33.  In the case at bar, the Debtor meets each of these requirements. The Debtor's sole asset is the Property, which is mixed-use real estate. The Debtor's sole source of income is rent payments from its tenants at the Property. The Debtor conducts no business other than activities incidental to its interest in the Property. The Debtor is not a family farmer under the Bankruptcy

11

Code. As such, the Debtor's Property is "single asset real estate" as defined by section 101(51B) of

the Bankruptcy Code. See also **Exhibit "A"** wherein the Subchapter V trustee described this case as

a "single asset real estate" case.

### C.       This Court Should Terminate the Debtor's
###          Exclusive Filing and Solicitation Periods

34.       By the Motion, Fairbridge also seeks entry of an order terminating the "Exclusive

Periods. While Fairbridge acknowledges that it is not typical for a party to seek the termination of

the Exclusive Periods this early in a chapter 11 case, the Debtor's chapter 11 case is atypical since it

is a true two-party dispute between the debtor and Fairbridge and was filed as a litigation tactic to

thwart Fairbridge from completing a UCC sale to enforce its rights after the Debtor went into default

in remitting its mortgage payments to Fairbridge.

35.       Except as may be terminated or extended by a court for cause, section 1121 of the

Bankruptcy Code sets the periods during which a debtor has the exclusive right to file a plan of

reorganization and solicit acceptances thereof to 120 and 180 days, respectively. See 11 U.S.C. §§

1121(b), (c). Although the Bankruptcy Code does not define "cause," bankruptcy courts have great

latitude in deciding, on a case-by-case basis, whether to terminate or extend exclusivity. *See, e.g.*, *In*

*re Energy Conversion Devices, Inc*., 474 B.R. 503, 508 (Bankr. E.D. Mich. 2012)(citations omitted).

36.       Indeed, one of the fundamental purposes of section 1121 of the Bankruptcy Code is

"to limit the delay that makes creditors the hostages of Chapter 11 debtors." *United Sav. Ass'n of*

*Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.*), 808

F.2d 363, 372 (5th Cir. 1987) (characterizing Bankruptcy Code section 1121 as "a congressional

acknowledgement that creditors, whose money is invested in the enterprise no less than the debtor's,

have a right to a say in the future of that enterprise"), aff'd, 484 U.S. 365 (1988).

37.     Although courts often examine the non-exclusive list of the factors set forth in *In re Adelphia Communications Corp.*, 352 B.R. 578 (Bankr S.D. N.Y.2006) in determining if cause exists to terminate exclusivity, courts have also recognized that some of the *Adelphia* factors may be more relevant or important than others based on the facts of each case. *See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.*), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (emphasizing that not all of the factors are relevant in each case and that it lies within the discretion of the bankruptcy court to determine which are appropriate in each case).

38.     Moreover, the *Adelphia* court recognized that the case law factors may not be determinative in every case and that the "primary consideration" for a court in determining whether exclusivity should continue or terminate is whether termination "will move the case forward." *See Adelphia*, 352 B.R. at 590. This amounts to "a practical call that can override a mere toting up of the factors." *Id*. See also *In re Henry May Newhall Mem'l Hosp.*, 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002) ("[A] transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward to a fair and equitable resolution.") In other words, "the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case. Certainly, practical considerations or other considerations in the interest of justice, could override, in certain cases, the results after analysis of the nine factors." *Adelphia*, 352 B.R. at 590.

39.     When a bankruptcy court terminates the exclusivity periods within the first 120 days of a case, it is usually because of "some conduct by the debtor that is short of conduct that would justify the appointment of a trustee (where the statute provides that the exclusive period is terminated automatically) but, still, troubling conduct, for example where the debtor appears to be unable to negotiate a plan because of internal conflicts, or is mismanaging the bankruptcy case short of the

13

need to replace management, or is otherwise using exclusivity in a way that Congress didn't contemplate when it gave debtors in possession the exclusive time to propose and obtain confirmation of a plan." *In re Excel Mar. Carriers Ltd*., 2013 Bankr. LEXIS 3920 (Bankr. S.D.N.Y. September 13, 2013)(citing *In re Texaco, Inc*. 81 B.R. 806, 812 (Bankr. S.D.N.Y. 1988)).

40.     The instant single asset real estate case, being a not complex two-party dispute between the Debtor and Fairbridge, with only two creditors other than Fairbridge who hold claims that total less $3000, is ripe for the relief sought in this motion.

41.     A public auction sale of the Property pursuant to a confirmed liquidating plan of reorganization in this Court, after an appropriate marketing period in order to obtain the highest and best offer for the Property, is the only viable exit scenario for this Chapter 11 case.  However, without an order terminating the Exclusive Periods, the case will be unable to move forward and Fairbridge will remain hostage to Debtor.

42.     No prior Application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, Fairbridge respectfully requests the entry of an order:

(1)     prohibiting the Debtor from using Cash Collateral and requiring the Debtor to segregate Cash Collateral for the benefit of Fairbridge;

(2)     designating the Debtor as a single asset real estate debtor pursuant to section 101(51B) of the Bankruptcy Code

(3)     terminating the Debtor's Exclusive Periods pursuant to section 1121(d)(1) of the Bankruptcy Code; and

(4)    granting Fairbridge such other and further relief as may be just and proper under the

circumstances.

Dated:    Uniondale, New York
          January 26, 2024

                              Sahn Ward Braff Koblenz PLLC
                              Attorneys for Fairbridge Real Estate
                              Investment Trust, LLC f/k/a
                              Realfi Real Estate Investment Trust, LLC

                              By:_/S/ Joel M. Shafferman_____
                              Joel M. Shafferman, Of Counsel
                              333 Earle Ovington Blvd Ste 601,
                              Uniondale, New York 11553
                               Email: jshafferman@sahnward.com