Landlord's approval any work on the roof of the Building (for example, in connection with repair, maintenance, or installation of any air conditioning system), Tenant shall use only a contractor approved by Landlord for such work and shall not do or cause anything to be done which would invalidate Landlord's then effective roof guaranty for the Building. Tenant shall also be responsible for promptly repairing (including any necessary replacement) any damage to the roof or Building caused by such work; provided that Landlord may, at its option, effect any such repair or replacement, in which event Tenant shall reimburse Landlord for all costs incurred by Landlord in connection therewith within fifteen (15) days after Tenant is billed therefor.

**Section 5.10** On or before the Expiration Date or sooner termination of this lease, if applicable, Tenant shall, at Tenant's expense, remove from the Building (a) all Tenant's Work which Landlord designates for removal in a notice given by Landlord to Tenant on or before the date which is thirty (30) days prior to the Expiration Date (or prior to the sooner termination of this lease, if applicable) and (b) Tenant's trade fixtures, equipment and personal property which are removable without material damage to the Premises or the Building ("Tenant's Property"). Tenant shall repair any damage to the Premises, and/or the Real Property, caused by the installation or removal of Tenant's Property, Signs or Tenant's Work. Except as expressly provided in this Section, Tenant's Work shall not be removed. Any Tenant's Property or Tenant's Work that Tenant was required to remove and which is not removed by Tenant by the Expiration Date or sooner termination of this lease shall be deemed abandoned and may, at Landlord's option, be retained as Landlord's property or disposed of by Landlord at Tenant's expense.

**Article 6. Tax Payments**

**Section 6.1** The term "Real Estate Taxes" (each, individually, a "Real Estate Tax") shall mean all taxes, assessments and special assessments, general or special, ordinary or extraordinary, foreseen or unforeseen, of any kind or nature whatsoever, including without limitation, municipal, school, county, open space taxes and business improvement and special improvement district assessments, levied, assessed or imposed at any time by any Authority upon or against the Real Property and/or any part thereof, and any rights or interests appurtenant thereto (hereinafter collectively referred to as the "taxable property"), including any taxes imposed on leasehold improvements. If, due to a future change in the method of taxation or in the taxing authority, a franchise, license, income, transit, profit or other tax, fee, or governmental imposition, however designated, shall be levied, assessed or imposed against Landlord, the taxable property (or any part thereof) or the rent or profit therefrom in lieu of, in addition to, or as a substitute for, all or any part of the Real Estate Taxes, then such franchise, license, income, transit, profit, or other tax, fee, or governmental imposition shall be deemed to be included within the definition of Real Estate Taxes for the purposes hereof. Real Estate Taxes shall be determined without reference to any abatement or exemption from or credit against Real Estate Taxes applicable to all or part of the taxable property. Notwithstanding the foregoing, Real Estate Taxes shall not include any general income tax, franchise tax, estate or gift tax that is of general application rather than imposed solely on owners of real property, or any mortgage, recording, stamp or transfer taxes payable in connection with the mortgaging , encumbrancing, transfer, sale or lease of all or part of the taxable property or of any beneficial interest in Landlord, or any portion thereof or interest therein.

**Section 6.2** The term "Tax Year" means each twelve (12) month period, whether fiscal or calendar, established by the applicable taxing Authority(ies) for the Real Estate

Taxes imposed by such Authority.

**Section 6.3** Tenant shall pay Landlord the Tax Payments described in Exhibit F of this lease in accordance with the provisions thereof. Terms that are capitalized in such Exhibit shall have the meanings ascribed to them in this lease. In no event shall the Fixed Rent or any other item of Additional Rent be reduced by reason of any decrease in Real Estate Taxes.

**Section 6.4** In addition to the Tax Payments, Tenant shall pay any and all: (a) other taxes, charges or impositions assessed on this lease or the Rent (to the extent such tax, charge or imposition is imposed on owners, landlords or tenants of real estate as such, rather than on taxpayers generally) by any Authority; (b) taxes assessed against any leasehold interest or personal property of any kind that is owned by or placed in, on, or about the Premises by Tenant; and (c) taxes and charges assessed by any Authority for Tenant's connection to or use of utilities.

**Section 6.5** The Additional Rent payable by Tenant pursuant to this Article shall be paid by Tenant notwithstanding the fact that Tenant may be exempt, in whole or in part, from the payment of any Real Estate Taxes by reason of Tenant's diplomatic, charitable, or otherwise tax exempt status, or for any other reason whatsoever.

**Section 6.6** Only Landlord shall be eligible to institute tax reduction or other proceedings to reduce the assessed valuation of the taxable property. Landlord is under no obligation to institute such proceedings. If, after Tenant has paid a Tax Payment, Landlord shall receive a refund of any portion of the Real Estate Taxes paid with respect to the Tax Year for which Tenant made such Tax Payment, Landlord shall promptly after receiving such refund pay Tenant its Proportionate Share of the net amount of such refund after deducting from such refund all expenses incurred by Landlord in obtaining such refund (including but not limited to reasonable attorneys' fees, expert's fees and disbursements incurred in connection with any application or proceeding). Alternatively, Landlord may, at Landlord's option, credit Tenant's Proportionate Share of such net refund against the next succeeding installment(s) of Rent coming due.

**Section 6.7** The expiration of this lease shall not relieve Tenant of the obligation to make Tax Payments on a pro rata basis for the portion(s) of the applicable Tax Years preceding such expiration.

**Article 7. Intentionally Omitted**

**Article 8. Utilities; Services**

**Section 8.1** Landlord shall not be responsible for providing any utility service to the Premises nor for providing meters, submeters or other devices for the measurement of utilities supplied to the Premises, and Tenant shall arrange for the furnishing to the Premises of such utility services as it may require, as well as for the installation of all such meters, submeters or other devices. Tenant shall be solely responsible for and shall promptly pay, to Landlord or the utility company, as applicable, as and when the same become due and payable, all charges for water, sewer, electricity, gas, telephone, cable service, internet service, steam, and any other utility or other communication device used or consumed in the Premises and supplied by a public utility or public authority or any other person, firm, or entity supplying same. If Landlord has designated any person or persons to provide one or more utility services to the Real Property, Tenant shall use the designated person(s) to obtain the applicable utility services. If Tenant does

not install a separate water meter for the Premises, the Landlord may bill the Tenant for the Tenant's Proportionate Share of water usage for the Building.

**Section 8.2** Tenant shall not overload the electrical system serving the Premises, and shall not at any time overburden or exceed the capacity of the mains, feeders, ducts, conduits, pipes, valves, or other facilities by which electric and other utilities are supplied to, distributed in or serve the Premises. If Tenant desires to install any equipment, other than a water meter, that shall require additional utility facilities, such installation shall be subject to Landlord's prior approval of Tenant's plans and specifications therefor. If such installation is approved by Landlord and if Landlord provides such additional facilities to accommodate Tenant's installation, Tenant agrees to pay Landlord, on demand, as Additional Rent, the cost for providing such additional utility facilities.

**Section 8.3** Landlord has no obligation to provide to Tenant or the Premises any services except as expressly set forth in this lease. Without limiting the foregoing, Landlord is not responsible for providing electric, gas, air conditioning, steam, cleaning service, trash collection, extermination, cable or internet service or ventilation to the Premises. Landlord shall provide the Tenant with heat and the Tenant shall pay Landlord it's Proportionate Share of the heating expenses for the Building. Landlord does not represent or warrant that any utility or other service provided by Landlord, or any utility or other service used or to be used by Tenant at the Premises, (a) shall be adequate for Tenant's particular purposes or (b) shall be free from interruption or reduction. Tenant shall have the option to install an HVAC Unit for the Premises, upon the Landlord's prior written consent, which shall not be unreasonably withheld. There is currently an air conditioner in the Premises, that belongs to the Landlord, which is being delivered in it's "as is" condition with no representation being made as to the condition of same.

**Section 8.4** If any utility or other service (a) becomes unavailable from any public utility company, public authority or any other person or entity supplying or distributing same (including Landlord), or (b) is interrupted by reason of Laws, the making of any repairs or improvements, or measures taken to secure the safety of the Real Property, or the safety and welfare of its tenants or occupants, or the public, or by reason of any cause beyond Landlord's reasonable control, (i) Landlord shall not be liable to Tenant in damages or otherwise, (ii) Tenant may not abate Rent or be relieved of any of its obligations under this lease, and (iii) such lack of availability or interruption shall not constitute an actual or constructive eviction, or a disturbance of Tenant's use of the Premises.

**Section 8.5** Tenant shall enter into, and maintain at all times during the Term, a contract for the twice weekly removal of Tenant's trash from the Building, with the carter selected by Tenant and approved by Landlord, to provide trash removal services to the Building, subject to any applicable Rules.

**Article 9. <u>Intentionally omitted</u>**

**Article 10.<u>Repairs and Maintenance</u>**

**Section 10.1** Landlord shall, at Landlord's expense, make all structural repairs needed to the exterior walls, structural columns, structural roof, and structural floors that enclose the Premises (excluding all doors, door frames, storefronts, windows and glass); provided that Tenant gives Landlord notice of the necessity for such repairs. Notwithstanding the foregoing,

Tenant shall reimburse Landlord, as Additional Rent, within thirty (30) days of being billed therefor, for all such repair costs to structural elements that are necessitated by the negligence or misconduct of Tenant, its employees, contractors, agents, subtenants, employees, customers and invitees.

**Section 10.2** If the Premises are sprinklered, Tenant shall be responsible, at Tenant's sole cost and expense, for maintaining, in good order and repair and in compliance with all Laws, those elements of the sprinkler system within the Premises, including the repair and replacement of the sprinkler heads and pipes. If the Premises are not sprinklered and a sprinkler system in the Premises is required under applicable Laws for Tenant's Permitted Use or manner of use of the Premises, or Tenant's Work requires the installation of a sprinkler system in the Premises, Tenant shall install such system as part of Tenant's Work, at Tenant's expense. Landlord shall not be responsible for maintenance, repairs or replacement of any element of the sprinkler system within the Premises.

**Section 10.3** Subject to Articles 14 and 15 and Section 10.1: Tenant shall make, at Tenant's sole expense, all repairs and replacements needed to maintain in good condition and order the Premises and all installations, equipment and facilities therein, and all repairs and replacements needed to any plumbing, water, waste, heating, ventilating and air conditioning units ("HVAC Units"), and electric conduits, lines and equipment located outside the Premises that serve only the Premises. Without limiting the foregoing, but subject to Articles 14 and 15 and Section 10.1, Tenant shall make all repairs and replacements required with respect to the HVAC Units, electrical and plumbing systems within the Premises and any rooftop or exterior air conditioning equipment or HVAC Units serving only the Premises, any plumbing fixtures within the Premises (including sinks and toilets), and the plumbing lines, valves, and pipes connected to or running from such fixtures to the point at which such lines, valves and pipes connect with the Building's common plumbing lines, including such plumbing lines or ducts connecting any roof-top or exterior equipment or HVAC Units or other utility or service to the Premises. Tenant shall also make, at Tenant's expense, such repairs and replacements as are needed to keep the sidewalks and walkways abutting the Premises in good condition and order, and shall keep such sidewalks and walkways [and areas behind the Building to which Tenant has access] free of rubbish, snow, ice and other obstructions, and otherwise in a safe and clean condition. All such repairs and replacements shall be made in compliance with the provisions of this lease (including Article 5).

**Section 10.4** Tenant shall enter into and maintain, at Tenant's expense, a service, maintenance and repair contract, in scope reasonably satisfactory to Landlord, with a reputable service company, reasonably satisfactory to Landlord, for the HVAC Units serving the Premises. Tenant shall, from time to time, furnish Landlord with a copy of such service contract, within ten (10) days after request. If Tenant fails to obtain or maintain such service contract or to deliver to Landlord a copy of such contract upon request, Landlord may, at its option, enter into a service contract providing for the maintenance, repair, and servicing of the HVAC Units and bill Tenant for the charges due under such contract. Any such charges shall be paid by Tenant within fifteen (15) days after Landlord delivers a bill therefor to Tenant, and such charges shall be deemed additional rent.

**Section 10.5** Subject to Section 13.4, Tenant shall reimburse Landlord, as Additional Rent, within thirty (30) days of being billed therefor, for all damage to the Building resulting from any act or omission of Tenant, Tenant's subtenants, or any of Tenant's or subtenants' employees, agents, employees, invitees or contractors.

**Section 10.6** Landlord shall have no liability to Tenant, the Rent shall not be abated, and Tenant shall not be deemed actually or constructively evicted by reason of Landlord performing any repairs or other work to all or any portion of the Premises and/or the Real Property. Landlord shall endeavor to perform such repairs or other work in a manner that reasonably minimizes interference with the conduct of Tenant's business in the Premises and damage to the Premises, Tenant's Work and Tenant's Property, but Landlord is not required to employ overtime labor or incur additional expenses.

**Article 11.Laws; Hazardous Substances**

**Section 11.1** Tenant shall, at Tenant's expense, comply with all present and future laws, rules, regulations, orders, ordinances, judgments, requirements and (if Landlord adopts same) recommendations (collectively, "Laws") of the United States of America, the State of New York, the city, town, village, municipality and/or county in which the Premises are located, or any present or future subdivision or instrumentality thereof, any court, agency, department, commission, board, bureau, and any fire insurance rating body (collectively, "Authority" or "Authorities") applicable to Tenant's occupancy of the Premises, Tenant's Work, Tenant's Property or the Premises. If, however, compliance requires structural work to the Premises, Tenant shall be required to effect such compliance, at Tenant's expense, only if the obligation to comply arises from Tenant's Work, Tenant's Property, Tenant's manner of using the Premises, or any acts or negligence of Tenant, its employees, contractors, agents, or invitees. Tenant shall promptly deliver to Landlord a copy of any notice, communication or other materials relating to the Premises, the Real Property (including the Building systems), Tenant's Property, Tenant's Work and/or Hazardous Substances (hereinafter defined) received by Tenant from, or sent by Tenant to, any Authority. Tenant shall have an obligation to remediate any Hazardous Substances pursuant to this Section if the need for such remediation arises from Tenant's Work, Tenant's specific manner of use of the Premises, or the actions or omissions to act of Tenant, subtenants, and/or any of their employees, contractors, agents or invitees.

**Section 11.2** Tenant shall not, and shall not permit any of its subtenants, employees, contractors, agents, or invitees, to introduce into the Premises or the Real Property, use in the Premises or the Real Property or cause to be released from the Premises or the Real Property any Hazardous Substances. Notwithstanding the preceding sentence, Tenant may use cleaning and office products in accordance with their customary use, provided that Tenant complies with all applicable Laws in connection therewith, and further provided that in no event may Tenant release or discharge such cleaning and/or office products into the plumbing, drainage or sewer system in excessive amounts. If Tenant breaches its obligations hereunder, Tenant, at Tenant's expense, shall immediately take all remedial action necessary to clean up any release, spill or discharge of Hazardous Substances. "Hazardous Substances" mean any flammable or otherwise hazardous material, any explosive and/or radioactive material, hazardous waste, hazardous or toxic substance or related material, asbestos and any material containing asbestos, petroleum and any petroleum derivative, pollutants, contaminants and any other substance or material which is defined as, determined to be, or identified as, a hazardous or toxic material or substance pursuant to any applicable Laws.

**Section 11.3** If Tenant shall be obligated to remediate any Hazardous Substances, it shall remove and dispose of any such Hazardous Substances in compliance with all applicable Laws. Tenant's remediation plan shall be subject to Landlord's approval and