Tenant shall keep Landlord fully apprised of the progress of Tenant's remediation efforts.

**Section 11.4**    Tenant shall indemnify, defend and hold harmless Landlord, its managing agent, its Superior Landlord, if any, its Mortgagee, if any, and their respective members, shareholders, partners, directors, managers, officers, employees, and agents, from and against all liabilities, damages, losses, fines, costs and expenses (including reasonable attorneys' fees and disbursements) resulting or arising from, or incurred in connection with any violation by Tenant of its obligations with respect to Hazardous Substances under this lease or otherwise under any applicable Laws.

**Section 11.5**    If Tenant conducts any auction, fire sale, going out of business sale, bankruptcy sale, or similar type of sale at the Premises in accordance with the provisions of this lease, Tenant shall obtain, and deliver to Landlord, prior to commencement of such auction or sale, any necessary permits, licenses and/or approvals required by any applicable Laws in connection therewith.

**Section 11.6**    Tenant shall, at its own cost and expense, secure and maintain throughout the Term, all necessary licenses and permits from such Authorities as shall be necessary for, or incidental to, the conduct of its business in the Premises and shall comply with all Laws relating to the operation of its business. Landlord does not covenant, warrant or make any representation that any Authority license or permit that may be required in connection with the operation of Tenant's business will be granted, or if granted, will be continued in effect or renewed, and any failure to obtain, maintain, or renew such license or permit, or its revocation after issuance, shall not affect Tenant's obligations under this lease.

**Section 11.7**    Subject to the provisions of this Section, provided that Tenant is not in Default, Tenant, at Tenant's expense, may contest by appropriate proceedings prosecuted diligently and in good faith the legality or applicability of any Laws affecting the Premises for which Tenant is responsible hereunder (any such proceedings instituted by Tenant, a "Compliance Challenge"), provided however, that Tenant's delay in compliance shall not cause (a) Landlord or Tenant to be subject to imprisonment or prosecution for a crime, (b) the Real Property or any part thereof to be condemned or vacated, (c) the certificate of occupancy for the Building or any part thereof to be suspended or cancelled, and/or (d) the use and enjoyment of its space by another lessee or licensee at the Real Property to be adversely affected. Tenant must give Landlord at least ten (10) business days notice before Tenant initiates a Compliance Challenge, and shall not initiate it if Landlord reasonably objects. At Landlord's request, prior to initiating a Compliance Challenge, Tenant shall furnish Landlord with either cash or a bond from a surety company reasonably satisfactory to Landlord in form and substance, in an amount equal to 120% of the sum, as reasonably estimated by Landlord, of (i) the cost of such compliance and (ii) the amount of any and all penalties and fines that may accrue by reason of non-compliance and (iii) the amount of any Landlord liability to third parties. Tenant shall keep Landlord informed regularly as to the status of any Compliance Challenge.

## Article 12. Subordination; Estoppel Certificates

**Section 12.1**    This lease, and the rights of Tenant under this lease, are subject and subordinate in all respects to all present and future underlying leases of the Real Property, including all modifications, extensions and replacements thereof ("Superior Leases") and all present and future mortgages on any Superior Lease or on the Building and/or the Real Property including all increases, renewals, modifications, extensions, supplements, consolidations and

replacements thereof ("Mortgages"), and all advances under any Mortgage. This Section is self-operative and no further instrument of subordination is required. Tenant shall, within fifteen (15) days following receipt of Landlord's request, sign, acknowledge and deliver any instrument that Landlord, any landlord under a Superior Lease ("Superior Landlord") or any mortgagee under a Mortgage ("Mortgagee") may request to evidence such subordination.

        **Section 12.2**    If any Mortgagee or any Superior Landlord or any successor or assignee thereof or any purchaser at a foreclosure sale or by deed in lieu of foreclosure succeeds to the rights of Landlord under this lease, then at the request of same, Tenant shall attorn to such Mortgagee, Superior Landlord, successor, assignee or purchaser as Tenant's landlord under this lease. Tenant shall, within fifteen (15) days following request by such Mortgagee, Superior Landlord, successor or assignee, sign, acknowledge and deliver any instrument that such Mortgagee, Superior Landlord, successor, assignee, or purchaser requests to evidence the attornment.

        **Section 12.3**    If any Mortgagee or Superior Landlord requires any modifications of this lease, Tenant shall, within fifteen (15) days following Tenant's receipt of a request, sign, acknowledge and deliver to Landlord instruments in form and substance reasonably requested by Landlord providing for those modifications (provided they do not materially adversely affect Tenant).

        **Section 12.4**    Landlord and Tenant shall, at any time and from time to time, within fifteen (15) days following its receipt of a request from the other party, sign, acknowledge and deliver to the requesting party or any other person designated by that party a certification (a) that this lease is in full force and effect and has not been modified (or, if modified, setting forth all modifications), (b) stating the date to which the Rent has been paid, (c) stating whether or not, to its actual knowledge, the other party is in default of its obligations under this lease and if so, describing the default, including any event that has occurred which, with the serving of notice or the passage of time, or both, would give rise to a default, and (d) stating to its actual knowledge, any other factual matters reasonably requested by the other party or any person designated by the other party. Any certification delivered pursuant to this Section may be relied upon by the third party for whom the certification is requested but shall not, as between Landlord and Tenant, affect their respective rights

        **Article 13.Insurance**

        **Section 13.1**    Tenant shall, at Tenant's expense, maintain at all times during the Term and at all times when Tenant is in possession of the Premises such insurance as shall be required by Landlord, including: (a) commercial general liability insurance (or successor form of insurance designated by Landlord) in respect of the Premises, on an occurrence basis, with a combined single limit (annually and per occurrence and location) of not less than three million ($3,000,000) dollars naming as additional insureds Landlord and any other person designated by Landlord, (b) property insurance in an amount equal to one hundred (100%) percent of full replacement value (with a deductible not exceeding five thousand ($5,000) dollars) covering Tenant's Work (including improvements and betterments, whether or not the improvements and betterments are restored), Tenant's Property and the property of third parties located in the Premises, against fire and other risks included in the standard New York form of property insurance, including business interruption insurance covering a period of twelve (12) months, (c) workers' compensation and employer's liability insurance providing statutory benefits for

Tenant's employees at the Premises (d) such other insurance as Landlord may reasonably require. Such liability insurance policy shall include contractual liability, fire and legal liability coverage. Landlord shall have the right at any time and from time to time, but not more frequently than once every two (2) years, to require Tenant to increase the amount of the commercial general liability insurance required to be maintained by Tenant under this lease provided the amount shall not exceed the amount then generally required of tenants entering into leases for similar Permitted Uses in similar buildings in the general vicinity of the Real Property.

**Section 13.2**    Tenant shall deliver to Landlord and each additional insured (a) certificates in form reasonably acceptable to Landlord evidencing the insurance required by this lease to be maintained by Tenant before the Commencement Date (and with respect to any insurance required pursuant to <u>Article 5</u>, before the commencement of any Tenant's Work), and at least fifteen (15) days before the expiration of any such insurance, and (b) upon request, a copy of each insurance policy. All required insurance (including insurance required pursuant to <u>Article 5</u>) shall be primary and non-contributory (as shown on endorsement), issued by companies reasonably satisfactory to Landlord and contain a provision whereby it cannot be canceled unless Landlord and any additional insureds are given at least thirty (30) days' prior written notice of the cancellation. Tenant may carry any required insurance under a blanket policy if that policy complies with the requirements of this lease and provides that Tenant's insurance for the
Premises is on a "per location basis".

**Section 13.3**    Tenant shall not do or permit to be done any act which shall invalidate or be in conflict with Landlord's insurance policies, or increase the rates of insurance applicable to the Real Property. If, as the result of a Default, Tenant's occupancy of the Premises (whether or not such occupancy is a Permitted Use), and/or specific hazards attributable to Tenant's occupancy, the insurance rates for the Real Property or Building increase, Tenant shall reimburse Landlord for one hundred (100%) percent of such increase in premium(s), within fifteen (15) days after Tenant is billed therefor.

**Section 13.4**    Provided its right of full recovery under its insurance policy is not adversely affected, Landlord and Tenant each hereby releases the other (and the other's agents and employees) with respect to any claim (including a claim for negligence) it may have against the other for damage or loss covered by its property insurance (including business interruption and loss of rent). Landlord and Tenant shall, to the extent obtainable, each procure a clause in, or endorsement on, any property insurance carried by it, pursuant to which the insurance company waives its right of subrogation against the other party to this lease and its agents and employees or consents to a waiver of the right of recovery against the other party to this lease and its agents and employees. If an additional premium is required for the waiver or consent, the other party shall be advised of that amount and may, but is not obligated to, pay the same. If that party elects not to pay the additional premium, the waiver or consent shall not be required in favor of that party.

**Section 13.5**    Any subtenant or other occupant of the Premises shall be obligated to comply with the provisions of this Article.

**Article 14. Casualty**

**Section 14.1**    If (a) the Premises are damaged by fire or other casualty, or (b) the Building (including any Building system) is damaged by fire or other casualty so that Tenant is

deprived of reasonable access to the Premises or so that the Premises or any part of the Premises is unusable by Tenant for the reasonable conduct of Tenant's normal business in the Premises, Tenant shall give prompt notice to Landlord. Subject to the provisions of this Article (i) Landlord shall, at Landlord's expense, repair the damage to the Premises, excluding the damage to Tenant's Work or Tenant's Property and (ii) Tenant shall, at Tenant's expense, promptly remove Tenant's Property from the Premises to the extent required by Landlord in connection with Landlord's repair of the damage and shall promptly after Landlord's substantial completion of the repair to the Premises, commence to diligently repair Tenant's Work and Tenant's Property in order to resume its normal business in the Premises. Until the repairs to be performed by Landlord are substantially completed, the Rent shall be reduced in proportion to the area of the Premises to which Tenant shall not have reasonable access or which is unusable by Tenant for the reasonable conduct of Tenant's normal business in the Premises and which Tenant does not actually use.

**Section 14.2**   If (a) the Premises are rendered wholly untenantable or (b) the Premises are damaged by any cause which is not covered by Landlord's insurance, or (c) greater than 50% of the Premises are damaged ~~in whole or in part~~ during the last two (2) years of the Term, or (d) the cost of repairing any damage to the Building by fire or other casualty exceeds twenty-five percent (25%) of the replacement cost thereof, as reasonably estimated by a reputable contractor, architect or engineer selected by Landlord, Landlord shall have the right, by notice given to Tenant within sixty (60) days following the date of the damage, to terminate this lease. If this lease is terminated pursuant to this Section, the Term shall expire on the fifteenth (15th) day after the notice is given as fully and completely as if such date were the stated Expiration Date.

**Section 14.3**   This Article constitutes an express agreement governing any damage to or destruction of the Premises or the Building by fire or other casualty, and Section 227 of the Real Property Law of the State of New York, and any other similar Laws shall have no application to a fire or other casualty.

## Article 15.Condemnation

**Section 15.1**   If as the result of a taking by condemnation or similar legal action of an Authority or a taking by an Authority effected in any other manner (a) all of the Premises, or so much thereof as renders the Premises wholly unusable by Tenant, is taken, (b) Tenant no longer has reasonable access to or use of the Premises, (c) all or substantially all of the Building is taken or (d) a portion of the Building is taken resulting in Landlord's determination to demolish the Building, or (e) the number of parking spaces in or serving the Real Property are reduced by such taking below the number of spaces required by any Laws and such reduction adversely impacts the use of the Premises, the Term shall expire on the date of the vesting of title as fully and completely as if such date were the stated Expiration Date. In the event of any such taking of all or any part of the Premises or the Real Property, Landlord shall be entitled to receive the entire award. Tenant shall have no claim against Landlord or any Authority for the value of the unexpired portion of the Term or Tenant's Work, and Tenant hereby assigns to Landlord all of its right in and to any such award. Tenant may, however, at Tenant's expense, make a separate claim to the appropriate Authority for the value of Tenant's Property and for moving expenses, provided such claim and award, if any, do not result in a reduction of the award which would otherwise be paid to Landlord. If a taking does not result in the termination of this lease (i) Landlord shall, at Landlord's expense, as soon as practicable, restore that part of

- 17 -

the Premises or the Real Property not taken to the extent reasonably practicable, so that the Premises are usable, and (ii) from and after the date of the vesting of title, the Rent shall be reduced in the same proportion as the area of the Premises, if any, which was taken.

### Article 16.Assignment and Subletting

**Section 16.1**    Except as provided in this Article, Tenant shall not, without Landlord's prior consent (which consent may be given or withheld at the sole discretion of the Landlord, not to be unreasonably withheld), assign, encumber or otherwise transfer this lease or any interest in this lease, by operation of law or otherwise, or sublet or permit others to occupy all or any part of the Premises, or license concessions or lease departments in the Premises, and any assignment, encumbrance, transfer, sublet, occupancy agreement, license or department lease shall be void ab initio if not in accordance with this Article. The transfer or issuance (by one or more related or unrelated transactions) of ownership interests of Tenant, or any Guarantor, or any direct or indirect owner of Tenant, which results in 50 percent or more of the ownership interests of that person being held by persons who did not hold 50 percent or more of those ownership interests on the date of this lease shall be considered an assignment of this lease which requires
Landlord's consent, unless such ownership interests are publicly traded on a national stock exchange or over-the-counter market. Tenant shall not permit any advertising or circulars regarding availability of the Premises for sublease or assignment to publicize an asking price that is equal to or less than Landlord's then current asking price.

**Section 16.2**    If Tenant desires to assign this lease or to sublet all or substantially all of the Premises, then upon Landlord's receipt of the Consent Request (hereinafter defined), together with the documents and information required under Section 16.4(d), Landlord may, at its option, elect to terminate this lease by notice given to Tenant, which notice shall specify a date for the termination of this lease (the "Recapture Termination Date"). Such option shall be exercised by giving Tenant notice of exercise within thirty (30) days after the date Landlord receives the Consent Request and the documents and information required under Section 16.4(d). The Recapture Termination Date shall be a date no earlier than two (2) months and no later than four (4) months after the date the Consent Request and such supplemental documents and information are delivered to Landlord. Upon the Recapture Termination Date, this lease and the term thereof shall end and expire as fully and completely as if such date were the date set forth herein as the stated Expiration Date. Tenant shall thereupon quit, surrender and vacate the Premises, without prejudice, however, to Landlord's rights and remedies against Tenant under the lease provisions in effect prior to the Recapture Termination Date or with respect to periods prior to the Recapture Termination Date, and any Rent owing shall be paid up to such date and any payments of Rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. If Landlord so terminates this lease, Landlord may, at its option and without liability to Tenant, lease the Premises to any person or entity that was negotiating with Tenant or that signed a lease, sublease or assignment agreement with Tenant for the Premises. If the Tenant, within 10 days' receipt of the Landlord's notice specifying the Recapture Termination Date, sends notice to the Landlord rescinding the Consent Request, then the Lease shall remain in full force and effect.

**Section 16.3**    Tenant acknowledges that the character and nature of the stores, store management and operations within the Building are important to Landlord and to the success of the Building. Subject to Tenant's compliance with the applicable provisions of this Article, Landlord agrees not to unreasonably withhold or delay its consent to a proposed

- 18 -