assignment of this lease or sublease of the entire Premises provided all the following conditions are met:

      (a)    Such assignee or subtenant shall use and occupy the Premises only for the Permitted Use.

      (b)    Such assignment or sublease shall not, in Landlord's judgment, adversely affect the quality and type of business operation which Tenant has conducted theretofore at the Premises in compliance with the provisions of this lease.

      (c)    The principal(s) of such assignee or subtenant shall possess qualifications for operating Tenant's business that are substantially equivalent to Tenant's qualifications, and have demonstrated recognized experience in successfully operating such a business.

      (d)    Tenant delivers to Landlord a written request (the "Consent Request") for Landlord's consent which shall include (i) the name and address of the proposed subtenant or assignee, (ii) the nature and character of the business of the proposed subtenant or assignee, (iii) current bank, financial and other credit information on the proposed subtenant or assignee, and (iv) a copy of the proposed assignment or sublease, fully executed, which assignment or sublease shall be in compliance with the requirements of this Article. Tenant shall promptly supply Landlord with such additional information as Landlord may reasonably request.

      (e)    At the time of such assignment or sublet, there is no Default.

      (f)    Tenant reimburses Landlord on demand for any out-of-pocket costs incurred by Landlord in connection with said assignment or sublease, including the costs of investigating the proposed assignee or subtenant and Landlord's reasonable legal costs.

      (g)    If Tenant assigns this lease, Tenant delivers to Landlord a fully executed assignment and assumption agreement, duly acknowledged, in form and substance reasonably satisfactory to Landlord.

      (h)    If Tenant subleases the Premises, Tenant delivers to Landlord a fully executed sublease, in form reasonably satisfactory to Landlord, that, among other things, provides that: (i) the sublease is subject and subordinate to this lease and to the matters to which this lease is or shall be subject and subordinate; (ii) the subtenant shall not, without Landlord's prior consent or approval, take any action, which, if to be taken by Tenant, would require Landlord's consent or approval; (iii) the subtenant shall, upon notice from Landlord that Tenant is then in default of this lease, pay the rent under the sublease directly to Landlord, to be applied to the Rent under this lease (and Tenant hereby consents to that payment and agrees that any such payment shall be credited against the subtenant's rent obligation under the sublease); (iv) the subtenant shall carry the insurance, and furnish to Landlord the evidence thereof, required by this lease to be carried and furnished by Tenant, and shall name Landlord and any other party designated by Landlord as additional insureds on its commercial general liability insurance, and (v) in the event of any termination, re-entry or dispossess by Landlord under this lease, the subtenant shall, at Landlord's option, vacate the Premises or attorn to Landlord pursuant to the then executory provisions of the sublease, except that Landlord shall not be (A) liable for any previous act or omission of Tenant under the sublease, (B) subject to any offset not expressly provided in the sublease, (C) be required to pay any construction allowance or other monetary payment due or payable from or by Tenant as sublandlord, or (D) bound by any change or extension of the sublease or prepayment of more than one (1) month's rent to which Landlord

did not consent in writing.

   (i) Consent has been obtained from any Mortgagee that has the right to consent to such assignment or sublease.

   (j) Any Guarantor delivers to Landlord such agreements as Landlord may reasonably require confirming Guarantor's continuing liability under its guaranty of this lease, but no failure to execute or deliver such documents shall impair such Guarantor's continuing liability under such guaranty in accordance with the terms of such guaranty.

   **Section 16.4** If Tenant assigns this lease or sublets the Premises after Landlord shall have consented to such sublease or assignment, Tenant shall pay Landlord, within fifteen (15) days following payment to Tenant, fifty 50% percent of: (a) all sums and other consideration paid in connection with an assignment (including key money, bonus money, and any payments for assets, inventory, fixtures, furniture and equipment transferred by Tenant to the assignee), after Tenant recovers therefrom all reasonable costs incurred by Tenant in connection with that assignment which have been paid or are then due and payable; and (b) the excess, if any, of the rents, additional charges and/or other consideration paid in connection with a sublease over the Rent allocable to the subleased premises (which Rent shall be allocated equally throughout the Premises) accruing during the term of that sublease after Tenant recovers therefrom all reasonable costs incurred by Tenant in connection with that sublease which have been paid or are then due and payable. For purposes of this Section, the phrase "reasonable costs incurred by Tenant" shall mean customary brokerage commissions, the cost of any standard alteration made by Tenant to prepare the Premises for such assignee's or subtenant's occupancy, and reasonable attorneys' fees incurred in connection with such assignment or sublease.

   **Section 16.5** If this lease is assigned or the Premises are sublet, in whole or in part, Tenant shall remain liable for the performance of all of the terms, covenants and conditions of this lease on the part of Tenant to be performed or observed and any Guarantor shall continue to remain liable under the terms of its guaranty of this lease. Tenant's liability hereunder shall not be affected by any modification of this lease or agreement made between Landlord and any assignee or subtenant, or by reason of any delay or failure on Landlord's part to enforce any of its rights under this lease; provided that if any such modification or agreement increases the obligation of the assignee under this lease, the liability of the assignor-Tenant under this lease shall continue to be no greater than if such modification or agreement had not been made unless such assignee is a person or entity that directly or indirectly controls, is controlled by or is under common control with Tenant.

   **Section 16.6** The consent by Landlord to any assignment, transfer, sublet, occupancy, encumbrance or other transaction described in Section 16.1, shall not in any way be deemed to relieve Tenant from obtaining the express consent of Landlord prior to any further such transaction or any proposed assignment of sublease or sub-sublease, which consent may be granted or denied at Landlord's discretion.

   **Section 16.7** The acceptance by Landlord of Rent following any assignment, sublease, encumbrance, license, occupancy, or other transaction in violation of this Article, shall not be deemed a consent by Landlord to such transaction, nor a waiver of any right or remedy of Landlord hereunder.

### Article 17. Access; Changes in Building and Real Property

**Section 17.1**   Landlord reserves the right to (a) place (and have access to) concealed ducts, pipes and conduits through the Premises (without a material reduction or reconfiguration of the useable area of the Premises), and (b) enter the Premises at reasonable times on reasonable prior notice, which may be oral (but prior notice shall not be required in an emergency), to inspect the Premises, to show the Premises to others or to perform any work or make any improvement Landlord deems necessary or desirable to the Premises or the Building or for the purpose of complying with Laws. If Tenant is not present when Landlord desires to enter the Premises, Landlord or Landlord's contractors may enter the Premises (by force, in the event of an emergency) without liability to Tenant.

**Section 17.2**   Landlord reserves the right at any time and from time to time to (a) make changes or revisions in the Real Property, including but not limited to the Building areas, walkways, driveways, parking areas, or other Common Areas, (b) construct improvements in the Real Property, (c) construct additions to, or additional stories on, the Building (which right includes the right to make use of structural elements of the Premises, including without limitation columns and footings, for such construction, provided such use does not materially encroach on the interior of the Premises), and (d) change the name, number or designation by which the Real Property and/or Building is known. Landlord's exercise of its rights pursuant to this Section shall not reduce the number of parking spaces serving the Real Property below that required by any Laws.

**Section 17.3**   If there is to be any excavation or construction adjacent to the Building, Tenant shall permit Landlord and/or any other person to enter the Premises to perform such work as Landlord or that person deems necessary to protect the Building, without any abatement of the Rent or liability to Tenant.

**Section 17.4**   Landlord shall have the exclusive right to use all or any part of the roof of the Building for any purpose, and to erect temporary scaffolds and other aids to construction on the exterior of the Premises in connection with alterations, repairs, improvements, and/or additions Landlord may make to the Building, provided that access to the Premises shall not be denied. Landlord may make any use it desires of the side exterior walls or rear walls of the Building.

**Section 17.5**   Landlord shall exercise Landlord's rights under this Article in a manner which reasonably minimizes interference with the conduct of Tenant's business in the Premises and damage to the Premises, Tenant's Work and Tenant's Property (all of which shall promptly be repaired by Landlord, at its expense), but Landlord is not required to employ overtime labor or incur additional expenses.

**Article 18. Default**

**Section 18.1**   Each of the following (a "Default") is a material default by Tenant under this lease:

(a)   Tenant fails to pay when due any Rent and the failure continues for three (3) business days following Landlord's notice (which notice shall also be considered any demand required by any Laws). If, however, Landlord gives such a notice of failure to pay Rent ~~two (2)~~ three times in any twelve (12) month period, any additional failure to pay any Rent when due within that twelve
(12) month period shall be considered a Default, without the requirement of any notice by

- 21 -

Landlord.

(b) Tenant fails to comply with <u>Article 16</u> or <u>Section 3.1</u> or <u>Section 3.2</u> or makes any misrepresentation under <u>Section 25.2.</u>

(c) Tenant fails to comply with any other term of this lease and the failure continues for thirty (30) days following Landlord's notice. If, however, compliance cannot, with diligence, reasonably be fully accomplished within that thirty (30) day period, Tenant shall have an additional period not to exceed forty-five (45) days to fully comply, provided compliance can reasonably be fully accomplished, and provided Tenant notifies Landlord of its intention to comply (with reasonably detailed steps to be taken) and commences compliance within that thirty (30) day period and thereafter pursues compliance to completion with diligence and provides Landlord with status updates on the progress at least every fifteen (15) days.

(d) A third party institutes against Tenant or Guarantor, if any, any legal action seeking any relief from its debts under any applicable bankruptcy or insolvency Laws which is not dismissed within ninety (90) days, or Tenant or Guarantor, if any, institutes any legal action seeking such relief, and/or a receiver, trustee, custodian or other similar official is appointed for Tenant or Guarantor, if any, or for all or a substantial portion of its assets, or Tenant or Guarantor, if any, commits any other act indicating insolvency such as making an assignment for the benefit of its creditors.

(e) Except as otherwise expressly permitted under this lease, Tenant vacates or abandons the Premises prior to the Expiration Date.

(f) Guarantor, if any, shall be in breach of its obligations under its guaranty of Tenant's obligations under this lease.

**Section 18.2** If a Default occurs, this lease is subject to the conditional limitation that Landlord may, at any time during the continuance of the Default, give notice to Tenant that this lease shall terminate on the date specified in that notice, which date shall not be less than ~~five (5)~~ ten (10) days after Landlord gives such notice to Tenant. If Landlord gives that notice, this lease and the Term shall expire and come to an end on the date set forth in that notice as if said date were the date originally fixed in this lease as the Expiration Date and Tenant shall quit and surrender the Premises to Landlord (but Tenant shall remain liable as provided in this lease).

**Section 18.3** If Tenant is in arrears in the payment of Rent, Tenant waives Tenant's right, if any, to designate the items against which any payments made by Tenant are to be credited, and Landlord may apply any payments made by Tenant to any items Landlord sees fit.

**Article 19.<u>Remedies</u>**

**Section 19.1** If this lease is terminated pursuant to <u>Article 18</u> or Landlord reenters or obtains possession of the Premises by summary proceedings or any other legal action or by force or otherwise (which Landlord may do without further notice and without liability or obligation to Tenant or any occupant of the Premises), all of the provisions of this Section shall apply (in addition to any other applicable provisions of this lease).

(a) Tenant, and all other occupants, shall vacate and surrender to Landlord the Premises in accordance with this lease.

(b) Landlord, at Landlord's option, may (i) relet the Premises, or any portion of the Premises, from time to time, in the name of Landlord, Tenant or otherwise, as determined by Landlord, to any person and on any terms, but Landlord shall have no obligation to relet the Premises, or any portion of the Premises, or to collect any rent (and the failure to relet the Premises, or any portion of the Premises, or to collect any rent shall not impose any liability or obligation on Landlord or relieve Tenant of any obligation or liability under this lease), and (ii) make any changes to the Premises as Landlord, in Landlord's judgment, considers advisable or necessary in connection with a reletting, without imposing any liability or obligation on Landlord or relieving Tenant of any obligation or liability under this lease.

(c) Tenant shall pay Landlord all Rent payable to the date on which this lease is terminated or Landlord re-enters or obtains possession of the Premises.

(d) Tenant shall also pay to Landlord, as damages, any deficiency between (i) the aggregate Rent for the period which otherwise would have constituted the unexpired portion of the Term (conclusively presuming the monthly Additional Rent for each year thereof to be $1/12^{th}$ of Additional Rent that was payable for the year immediately preceding the termination, re-entry or obtaining of possession) and (ii) the rents, if any, applicable to that period collected under any reletting of all or any portion of the Premises. Tenant shall pay any deficiency in monthly installments on the days specified in this lease for payment of installments of the Fixed Rent, and Landlord shall be entitled to recover from Tenant each monthly deficiency as the same arises. No suit to collect the deficiency for any month shall prejudice Landlord's right to collect the deficiency for any subsequent month. Tenant shall not be entitled to any rents payable (whether or not collected) under any reletting, whether or not those rents exceed the Rent. If Landlord relets the Premises, or any portion of the Premises, together with other space in the Building, the rents collected under the reletting and the expenses of the reletting shall be equitably apportioned for the purposes of this Article.

(e) Landlord may recover from Tenant, and Tenant shall pay Landlord, on request, in lieu of any further deficiency pursuant to the preceding paragraph of this Section (as liquidated damages for such deficiency) the amount by which (i) the unpaid Rent for the period which otherwise would have constituted the unexpired portion of the Term (conclusively presuming the Additional Rent for each year thereof to be the same as was payable for the year immediately preceding the termination, re-entry or obtaining of possession) exceeds (ii) the then fair market rental value of the Premises, including the Additional Rent for the same period, both discounted to present value at an annual rate of interest equal to five (5%) percent. If, before presentation of proof of liquidated damages, Landlord relets the Premises or any portion of the Premises for any period pursuant to a bona fide lease with an unrelated third party, the net rents (after deducting reletting costs) payable in connection with the reletting shall be considered to be the fair market rental value for the Premises or the portion of the Premises relet during the term of the reletting.

(f) Tenant shall also pay Landlord, as additional damages, any expenses incurred by Landlord in connection with the termination, reentry or obtaining of possession, and the reletting of the Premises, including all repossession costs, brokerage commissions, reasonable attorneys' fees and disbursements, alteration costs and other expenses of preparing the Premises for reletting.